## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

RANDALL C. HALL,

     PLAINTIFF,

     V.

SHEILA HOINESS, ET AL.

     DEFENDANTS.

CASE NO. 3:24-CV-50531

HONORABLE IAIN D. JOHNSTON

## MEMORANDUM OPINION AND ORDER

Randall ("Randy") Hall has named his siblings, Sheila Hoiness, Roland Hall, Richard Hall, Sarah Hall, and Sally Butler—as well as his sister-in-law, Rosemary Hall—personally, in a six-count action for alleged wrongdoing related to two trusts created by their late mother and father: the Violet Hall Trust and the Richard Hall Family Trust, respectively. Sheila Hoiness, Roland Hall, and Rosemary Hall have each also been named as trustees. After Randy's first two complaints were dismissed without prejudice for failure to comply with Fed. R. Civ. P. 8, he has submitted a Second Amended Complaint. *See* Dkt. 16; Dkt. 29; Dkt. 32. Defendants have moved to dismiss the Second Amended Complaint, citing Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and—yet again—Fed. R. Civ. P. 8. *See* Dkt. 34; Dkt. 35. For the reasons below, the motions [34] and [35] are granted in part and denied in part. Counts I and II are dismissed.

## Background[1]

In early 1997, Richard Hall Sr. made two relevant legal decisions. First, he executed a will, creating a testamentary family trust for his children: Richard Jr., Sally, Roland, Sarah, Sheila, Randy, and Susan.[2] Second Amended Complaint [32] at ¶¶ 13-14. Second, he executed several quitclaim deeds, transferring real property to his wife, Violet Hall. *Id.* at ¶¶ 15-19. As a result, when Richard Sr. died in May 1997, the Richard Hall Family Trust came into existence, holding half of the interest in six farms, while Violet held the other half. *Id.* at ¶¶ 19, 21-22. The terms of the family trust made the assets inaccessible to his children until after Violet's death. *Id.* at ¶ 14.

In 2008, Violet created a spendthrift trust of her own, the Violet L. Hall Trust No. 2-08. *Id.* at ¶ 24. The trust was funded with all of Violet's assets.[3] The trust's terms limited how it could be amended.[4] *Id.* at ¶¶ 25-26.

---

[1] These allegations are taken from the Second Amended Complaint [32] and attached exhibits [33]. The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[2] Susan is named in the 2008 will as one of Violet's seven living children. *See* Second Amended Complaint [33], ex. 2, art. 3. Susan was named as deceased in the initial complaint and the first amended complaint. *See* Complaint [1] at ¶¶ 20-21; Amended Complaint [20] at ¶¶ 18-19. This detail was apparently cut in effort to comply with Rule 8. Susan is not referenced at all in the Second Amended Complaint. The timing and circumstances of Susan's death are unknown, except that neither her estate nor her heirs have been named as defendants in this matter.

[3] This is not necessarily supported by the face of the trust. *See* ex. 2 ("I, Violet L. Hall… have transferred to myself, as Trustee, *certain* property …") (emphasis added). Nonetheless, a transfer of "certain" property does not foreclose the possibility she transferred "all" of her property, and the allegation is accepted as true for the purpose of this motion.

[4] Randy alleges that three requirements for amendments are present in the Trust Declaration: "(1) it had to be in writing; (2) it could not be in a will; and (3) and (sic) if Violet did not suffer from 'illness or mental or physical disability and unable to give prompt and intelligent consideration to financial matters and the determination as to my inability at any time shall be made… upon written notice of that determination.'" Second Amended Complaint [32] at ¶ 26. This allegation does not make sense, likely because it attempts to shoehorn two different areas of the trust. *See* Second Amended Complaint [33] ex. 2, art. I; art. VIII. The first two conditions come from Article VIII regarding amendments. That's fine. But the last supposed condition comes from Article I, which discusses not

In approximately 2018, Violet was diagnosed with dementia and lost the mental capacity to manage her affairs.[5] *Id.* at ¶¶ 29, 32. In January 2019, Randy's five living siblings plus Rosemary worked with Violet and an attorney (who was close with the family) to amend the trust, despite her condition. *Id.* at ¶¶ 35-38. Violet signed the Second Amendment to the Violet Hall Trust on January 8, 2019.[6] *Id.* at ¶ 39. This amendment revoked all prior amendments to the trust and reduced Randy's interest in the trust to $50,000, to be paid from a to-be-established spendthrift trust in the amount of $1,500 monthly. *See* Second Amended Complaint [33], ex. 4. No actions were taken by Violet in her lifetime towards establishing this separate trust.[7] Second Amended Complaint [32] at ¶ 42. After the trust was amended, a copy was sent to Roland and Richard's attorneys, but not to Randy.[8] *Id.* at ¶ 43.

---

amendments, but rather the use of the trust and how the funds could be used to support Violet *if* she were to become disabled. Only the first two conditions listed in the complaint (contained in art. VIII) were actual conditions to amendment of the trust. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

[5] In support of the allegation that his siblings were aware of their mother's mental condition, Randy submits exhibit 3, a Xerox copy of a phone screen showing a text conversation labeled "Outgoing." Second Amended Complaint [33], ex. 3. It is not clear who is talking, when they are talking, or in what context they are talking. The Court is only required to accept as true "well-pleaded facts" and make "reasonable" inferences in favor of Plaintiff. *Platt*, 872 F.3d at 851. This exhibit is neither well-plead nor useful.

[6] The details surrounding the First Amendment to the trust are unknown to Randy. *See* Second Amended Complaint [32] at ¶ 28.

[7] To be clear, the terms of the amendment would not require Violet to do anything in her lifetime. The amendment struck ¶¶ 2-4 of art. 3 of the trust. Art. 3 ¶ 1, which remained, states: "*After my death*, the balance of the Trust Estate shall be held and disposed of as follows …" Second Amended Complaint ex. 2, art. 3 (emphasis added). So, the *trustee* would be responsible for the formation of Randy's spendthrift trust only *after* Violet's death.

[8] The Second Amended Complaint [32] at ¶ 41 alleges that the trustee of the Violet Hall trust never received a written statement of mental capacity from Violet's doctor. Further, ¶ 43 alleges "[t]his letter [notifying Roland and Richard's attorney of the amendment] admits that the trustee of Violet's trust did not provide a determination that Violet had the mental capacity required to amend the

In March 2020, Sheila Hoiness became trustee of the Violet Hall trust but did not notify Randy.[9] *Id*. at ¶ 44.

In July 2022, Violet died of senile degeneration of the brain. *Id*. at ¶ 47. Randy was made aware of Violet's death two days later but was not informed that he was the beneficiary of any trusts. *Id*. at ¶ 49.

In February 2024, Rosemary, acting as trustee of the Family Trust, mailed a letter to Randy, informing him "for the first time" that he was a beneficiary of the Family Trust and providing an Inventory of Trust Assets for July 2022 through December 2023.[10] *Id*. at ¶ 51. In May 2024, Randy was provided with a copy of the Violet Hall Trust Declaration, as well as the Second Amendment. *Id*. at ¶ 59. In August 2024, Randy's demand for 1/6 of the Family Trust went ignored. *Id*. at ¶ 71. By October 2024, Randy's spendthrift trust had been created, but payment had not been distributed. *Id*. at ¶ 61. To date, Randy alleges that he has not received accounting of Violet's trust, nor books and assets of the Family Trust. *Id*. at ¶¶ 63, 74.

---

trust prior to execution of the Second Amendment, as the trust declaration required…" As previously described at n.4, only two requirements were present for amending the trust: that it be in writing and that it not be a will. There was no requirement for a physician determination of mental capacity.
[9] Roland Hall is also named as a defendant in his capacity as trustee of the Violet Hall trust; however, there is no information in the Second Amended Complaint pertaining to how or when he became a trustee. Worse still, Rosemary Hall is named as a defendant in her capacity as trustee of the Richard Hall Family Trust; however, the Second Amended Complaint contradicts itself pertaining to when she became a trustee. In ¶ 4, it was in 2022. But in ¶ 22 it was in March 2020.
[10] The 19 months between Violet's death and this letter would seem to be very important for deciding this case, but are conspicuously absent from the Second Amended Complaint, notwithstanding the sale of Violet's home in October 2023. *See* Second Amended Complaint [32] at ¶ 50. The Court takes judicial notice that during this time, Violet Hall's will was admitted to probate in Ogle County Circuit Court on January 12, 2023 (Case No. 2023-PR-03). That case remains open at the time of this order, with a status hearing scheduled for 02/11/2026.

The Richard Hall Family Trust and Violet Hall Trust together own part or all of seven farms and half of a residence, totaling over 600 acres of farmland with no debt, worth more than $7,500,000. *Id.* at ¶¶ 76-78. The Family Trust additionally has a bank account with approximately $200,000 in cash and farm machinery and equipment valued at approximately $160,050. *Id.* at ¶¶ 79, 82. The Violet Hall Trust has a bank account with approximately $200,000 and an interest in a house sold for $110,000. *Id.* at ¶¶ 81, 83.

In addition to the alleged concealment of trust funds, it is further alleged that Roland and Richard Hall have purchased parcels of additional farmland and improperly harvested crops owned by the trust, earning approximately $600,000 yearly, while receiving millions in government aid and without paying rent to the trust. *Id.* at ¶¶ 85-89. Additional properties were also purchased by Roland and Richard Jr., improperly using the trust property and crops as collateral. *Id.* at ¶¶ 90-94.

\* \* \*

In the present action, Randy has brought six counts: (i) a "petition to terminate" and for other relief under the Illinois Trust Code, 760 ILCS 3/101 et seq., against the Richard Hall Family Trust; (ii) a "petition to terminate" and for other relief under the Illinois Trust Code, 760 ILCS 3/101 et seq., against the Violet Hall Trust; (iii) a claim for breach of fiduciary duty against Rosemary Hall; (iv) a claim for breach of fiduciary duty against Roland Hall and Sheila Hoiness; (v) a claim for

5

conspiracy against all defendants; and (vi) a claim for intentional interference with inheritance against all defendants. *Id*. at ¶¶ 95-177.

Through these causes of action, Randy seeks: (i) 20 separate acts of relief under the Illinois Trust Code, 760 ILCS 3/101 et seq., involving the Richard Hall trust, including but not limited to declaring the beneficiaries, declaring and identifying the assets owned by the trust, reducing Defendants' shares, declaring the terms of the trust, removing the trustee, and dissolving the trust; (ii) 19 separate acts of relief under the Illinois Trust Code, 760 ILCS 3/101 et seq., involving the Violet Hall trust, including but not limited to declaring the beneficiaries, declaring and identifying the assets owned by the trust, reducing Defendants' shares, declaring the terms of the trust, removing the trustees, and dissolving the trust; (iii) compensatory and punitive damages against Rosemary Hall for breach of fiduciary duty in excess of $75,000; (iv) compensatory and punitive damages against Roland Hall and Sheila Hoiness for breach of fiduciary duty in excess of $75,000; (v) compensatory and punitive damages against Roland Hall, Richard Hall Jr., Sheila Hoiness, Sarah Hall, and Sally Butler for conspiracy in excess of $75,000; and (vi) compensatory and punitive damages against Roland Hall, Richard Hall Jr., Sheila Hoiness, Sarah Hall, and Sally Butler for intentional interference with inheritance in excess of $75,000. *Id*.

**Legal Standard**

> i. *General Rules of Pleading (Fed. R. Civ. P. 8)*

By design, the system of pleading set forth in the Federal Rules of Civil Procedure makes it relatively easy for plaintiffs to subject defendants to discovery, even for claims that are likely to fail. *Berk v. Choy*, 607 U.S. ___ at *4 (2026). "Rule 8(a)(2) requires 'only' a 'short and plain statement of the claim.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 165 (1993)). Where a lengthy complaint—even one with superfluous matter included—provides the defendant notice of the plaintiff's claims, dismissal is inappropriate under Rule 8. *DeJong v. Pembrook*, 662 F.Supp.3d 896, 916 (S.D. Ill. 2023) (citing *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011)). Absent unintelligibility or incomprehensibility, undue length alone is insufficient to provide grounds for dismissal under Rule 8. *Nygren*, 658 F.3d at 797-98.

> ii. *Subject-Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))*

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and federal statute. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction… and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). To survive a motion to dismiss under Rule 12(b)(1), the plaintiff must demonstrate that jurisdictional requirements have been met by a preponderance of the evidence. *Schaefer v.*

*Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

Though not compelled by the text of the Constitution nor federal statute, the probate exception to federal court jurisdiction is one long accepted by our Supreme Court. *See Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (citing *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006)). Under this exception, federal courts have no jurisdiction to "probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946). The probate exception also applies to disputes about trusts used in lieu of wills. *Storm v. Storm*, 328 F.3d 941, 947 (7th Cir. 2003); *Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003).

Nonetheless, federal courts do have jurisdiction to entertain suits against an estate which establish a claim, so long as the federal court does not interfere with the probate proceedings or assume "general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494 (1946). In this sense, "interfere" has been interpreted to mean only that when a probate court is exercising *in rem* jurisdiction over a *res*, a second court (the federal court) will not assume *in rem* jurisdiction over the same *res. Marshall*, 547 U.S. at 311. Breach of fiduciary duty is a matter "well beyond" probate of a will. *Id*. Likewise, interference with a gift or inheritance is a "widely recognized tort" that does not involve the administration of an estate. *Id*. at 312.

8

*iii.*      *Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and give the defendant fair notice of the basis of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when there is "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. The plaintiff must plead enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Conclusory and legal allegations "are not entitled to be assumed true." *Iqbal*, 556 U.S. at 680–81.

Although as a general matter, complaints need not anticipate affirmative defenses, an exception lies in situations where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint is untimely under the governing statute of limitations. *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)). Motions to dismiss, however, are not typically the appropriate forum to determine the suitable statute of limitations. "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)…" *Sidney Hillman Health Center of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

9

**Analysis**

> i.     *"Short and Plain"*

Twice turned back for not being "short and plain," it's hard to say the newest complaint is meaningfully better. The Second Amended Complaint remains confusing, contradictory, and long. Although the Court appreciates that the subject matter is somewhat complex, the story is long, and that there was an earnest attempt to whittle this down—what began at 453 paragraphs is now 177—it also sincerely hopes that drafting and writing will improve as this case progresses.[11] Better writing only makes everyone's lives easier.

The Second Amended Complaint was not so indecipherable as to prevent the Court from constructing the above background. It wasn't easy, but the job was done. So, the matter will not be dismissed for running afoul of Rule 8.

> ii.     *Counts I and II: "Petition to Terminate" the Richard Hall Family Trust and Violet Hall Trust*

At the heart of Randy's complaint is a family dispute over an inheritance. On the ground floor, where Counts I and II ask this Court to intervene, this is a matter squarely in the purview of the Probate Court and should not be intruded upon by

---

[11] Plaintiff's Response [39] does not give the Court confidence. As described in the Court's last order in this case, you can't ask for leave to file a brief in excess of the 15-page limit on page 29 of the very brief that exceeds the page limit. *See* dkt. 29 at n.1 ("Plaintiff… seeking leave to exceed the page limit on page 28 of its own response exceeding the limit… is ineffective."). Randy engages in the same shenanigans with this briefing. *See* Plaintiff's Response [39] at ¶ 61. This must end. *See McCann v. Cullinan*, No. 11-cv-50125, 2015 U.S. Dist. LEXIS 91362, at *6 (N.D. Ill. July 14, 2015) ("The old adage that it is better to beg for forgiveness than plead for permission was rejected by the Federal Rules of Civil Procedure."). The Court is within its discretion to enforce strict compliance with the Local Rules. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). Future filings running afoul of Local Rules and Standing Orders will be stricken. *See also*, *Aska v. Yingling*, 23-cv-50004, 2026 U.S. Dist. LEXIS 12624 (N.D. Ill. Jan. 23, 2026).

the federal courts, even under the narrow scope of the probate exception doctrine set forth in *Marshall*.

Randy goes to great lengths to argue that this matter is distinct from the probate proceedings and that the complaint "does not seek … to invalidate a will" nor "contest the validity" of the trusts. Plaintiff's Response [39] at ¶¶ 17, 24, 50, 59. But this assertion is belied by titling the counts "petition to terminate" and then asking this Court to effectively take superseding control over the probate court in managing the trusts. Randy wants the Court to take approximately 20 actions related to each trust—including dissolution—that would neutralize the probate court's efforts to administer the wills and trusts of both Richard Hall Sr. and Violet Hall.

Both Richard Hall Sr. and Violet Hall's wills have been admitted to probate. *See In re Violet L Hall*, Ogle County Circuit Court Case No. 2023-PR-03; *In re Richard Hall Sr.*, Ogle County Circuit Court Case No. 1997-P-42. It is immaterial that the dispute is over a trust rather than a will. *See Storm*, 328 F.3d at 947. What's more, it is immaterial that these allegations have not been brought before the probate court to date. Richard Hall Sr. died in 1997. Violet Hall died in 2022. That Randy has apparently taken no steps towards resolving the terms of these trusts in the appropriate forum—despite one of the cases remaining open—does not provide an alternative forum to do so in federal court.[12]

---

[12] Defendants provide a compelling argument for Counts I and II to be dismissed based on the statute of limitations as well. The Court cannot reach that issue when it lacks jurisdiction.

As alleged, Violet removed or otherwise reduced Randy's share from her inheritance before her death. Whether this was due to a conspiracy amongst Randy's siblings to take advantage of their mother at his expense, or in fact because Randy sued Violet six months before she amended her trust,[13] the probate court is the appropriate venue for resolving the terms of the trust and determining the validity of the amendment. The motion to dismiss is granted as to Counts I and II.

### iii.     Counts III and IV: Breaches of Fiduciary Duty

To prevail on a claim for breach of fiduciary duty in Illinois, a plaintiff must demonstrate three elements: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the plaintiff complains." *McMahan v. Deutsche Bank AG*, 938 F.Supp.2d 795, 809 (N.D. Ill. 2013) (quoting *Neade v. Portes*, 193 Ill.2d 433, 444 (2000)). Again, breach of fiduciary duty is "well beyond" the probate of a will or administration of a decedent's estate and is therefore not subject to the probate exception. *Marshall*, 547 U.S. at 311; *see also, Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) ("Such a claim does not ask the court in which it is filed to administer the estate, but rather to impose tort liability on the [trustees] for breach of fiduciary duty.").

Nonetheless, Defendants challenge Randy's standing as improperly attacking actions taken by trustees which occurred before his interest in the trusts vested, specifically Violet's death in 2022. Although it's likely true that some of Randy's grievances against Rosemary (in Count III) and against Roland and Sheila (in

---

[13] *See* Individual Defendants' Motion to Dismiss [34], ex. C; Ogle County Circuit Court Case No. 2018-CH-34.

Count IV) are without merit and/or occurred before they became trustee(s), reading the allegations in a light most favorable to Randy, he has pled enough to proceed to discovery on allegations of breach of fiduciary duty.

For example, Randy alleges that Rosemary, Roland, and Sheila each "[f]ailed to comply with Randy's reasonable demands because [they were] asserting [their] own self interest [or that of her husband]." Second Amended Complaint at ¶¶ 129(f), 141(f). This is a prototypical allegation of breach of a trustee's fiduciary duty of loyalty. *See, e.g., Grove v. Morton Comm. Bank*, 205 N.E.3d 862, 873 (Ill.App.3d 2022).

As a beneficiary of both trusts, Randy possessed standing to bring a claim for breach of fiduciary duty when this action was filed in December 2024. By all accounts, each of these three defendants remains a trustee to date. So, not *all* of these allegations can have predated Randy's interests vesting. Argument related to the statute of limitations on specific breaches is premature, because at least some are alleged to have occurred up to the filing of the case. Counts III and IV may proceed.

iv.   *Counts V and VI: Conspiracy and Intentional Interference with Inheritance*

To prevail on a claim for conspiracy in Illinois, a plaintiff must demonstrate "(1) a combination of two or more persons (2) for the purposes of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Martinez v. Freedom Mortg. Team, Inc.*, 527 F.Supp.2d

827, 839 (N.D. Ill. 2007) (citing *Fritz v. Johnson*, 209 Ill.2d 302, 317 (2004)). To prevail on a claim of intentional interference with inheritance, a plaintiff must demonstrate "(1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." *In re Estate of Ellis*, 236 Ill.2d 45, 52 (2009).

In *Marshall*, the Supreme Court found tortious interference with inheritance to be outside the confines of the probate exception. *Marshall*, 547 U.S. at 312. Though not directly addressed by *Marshall*, conspiracy too does not directly involve "the probate or annulment of a will or the administration of a decedent's estate," nor "dispos[ing] of property that is in the custody of a state probate court." *Id.* at 311-12. *See also*, *Black v. Goodwin*, 19 C 5305, 2020 U.S. Dist. LEXIS 126754 at *11 (N.D. Ill. July 20, 2020).

As with the alleged breach of fiduciary duties, dismissal on account of a statute of limitations is premature. Accepting the facts contained in the second amended complaint as true, both the torts of conspiracy and intentional interference continued well into 2024, with Defendants conspiring to conceal information and assets related to inheritance from Randy. Second Amended Complaint [32] at ¶¶ 150-55, 166-71.

Addressing Defendants' arguments that Count V should be dismissed as duplicative to Count VI, Randy clearly ascribes varying degrees of interference to

14

respective defendants. Roland and Richard each receive nearly a half page of alleged tortious conduct, while Sarah and Sally receive one sentence each. Second Amended Complaint at ¶¶ 166-67, 170-71. Discovery will work to flesh out who has done what—or done nothing at all.

Finally, to the extent Defendants argue that Counts V and VI are inappropriate due to the nature of the trust transfers (i.e., that they were not *inter vivos* transfers), or alternatively that Illinois does not permit this tort in this scenario, these arguments fail at this stage.

A probate claim under a will and a tort claim for intentional interference with an expectancy are two different claims, evaluated in two different lights. *See In re Estate of Ellis*, 236 Ill.2d 45, 51-52 (2009); *Bjork v. O'Meara*, 369 Ill.Dec. 313, 321 (2013). Although closely related, they are subject to different statutes of limitations and restrictions, and ultimately in a narrow set of circumstances the outcome of a tort claim may peripherally attack the results of the probate court proceedings. *See Ellis*, 236 Ill.2d at 56-57; *Bjork*, 369 Ill.Dec. at 321.

It is true that the tort is limited to those cases when relief under the probate proceedings was unavailable or insufficient. *Robinson v. First State Bank of Monticello*, 97 Ill.2d 174, 185 (1983); *Ellis*, 236 Ill.2d at 55-56; *Bjork*, 369 Ill.Dec. at 321. An *inter vivos* transfer is evidence of this unavailability but is not a prerequisite to pleading. *See Ellis*, 236 Ill.2d at 56. Given the six-month statute of limitations to contest a will, Randy has adequately pled that the probate proceeding is unavailable to him. *See* Second Amended Complaint [32] at ¶¶ 51, 58-59 (Randy

15

expressing that he learned of the trusts "for the first time" in February 2024).[14] So, for now, Counts V and VI may proceed.

**Conclusion**

For the above reasons, Defendants' Motions to Dismiss the Second Amended Complaint [34] and [35] are granted in part and denied in part. Counts I and II of the Second Amended Complaint are dismissed without prejudice. The action should proceed with expedited discovery before the Magistrate Judge.

Entered: February 6, 2026                                    By: _____

Iain D. Johnston
U.S. District Judge

---

[14] As alluded to above in n.10, the Court has a healthy amount of skepticism that Randy had simply no idea that he was a beneficiary of either trust until February 2024. His father died in 1997. His mother died in 2022 after an apparently lengthy battle with dementia. He never—before February 2024—stopped to wonder what would happen to the $7,500,000 in his parents' farmland? What's more, a review of the docket in Ogle County Circuit Court Case No. 2018-CH-34 demonstrates continued litigation between many of these parties since at least 2018. *See* Individual Defendants' Motion [34], ex. C. Randy is represented by the same attorney in that matter. *Id*. Nonetheless, the Court will take Randy at his word for deciding this motion, while taking this time to remind Randy—and his attorney—of their Fed. R. Civ. P. 11(b) obligations.